**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BALKRISHNA SETTY, individually
and as general partner in Shrinivas
Sugandhalaya Partnership with
Nagraj Setty; SHRINIVAS
SUGANDHALAYA (BNG) LLP,
*Plaintiffs-Appellees*,

v.

SHRINIVAS SUGANDHALAYA LLP,
*Defendant-Appellant.*

No. 18-35573

D.C. No.
2:17-cv-01146-
RAJ

OPINION

On Remand from the United States Supreme Court

Filed July 7, 2021

Before:  Dorothy W. Nelson, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge D. W. Nelson;
Dissent by Judge Bea

## SUMMARY[**]

### Arbitration

On remand from the Supreme Court, the panel affirmed the district court's order denying defendant's motion to compel arbitration against plaintiffs pursuant to the New York Convention and to grant a stay pending arbitration.

In a prior opinion, the panel held that defendant Shrinivas Sugandhalaya LLP ("SS Mumbai") could not equitably estop plaintiffs Balkrishna Setty and Shrinivas Sugandhalaya (BNG) LLP (collectively, "SS Bangalore") from avoiding arbitration. SS Mumbai was a non-signatory to a partnership deed that contained an arbitration provision. The Supreme Court granted certiorari, vacated the Court of Appeals' judgment, and remanded for further consideration in light of *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020).

SS Mumbai argued that, based on the arbitration provision, Indian law applied to the question whether SS Mumbai could compel Bangalore to arbitrate. The panel declined to apply Indian law because whether SS Mumbai could enforce the partnership deed as a non-signatory was a threshold issue for which the panel did not look to the agreement itself. Moreover, the deed's arbitration provision applied to disputes "arising between the partners" and not also to third parties such as SS Mumbai.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In this case involving the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, or New York Convention, the panel applied federal substantive law in determining the arbitrability of federal claims by or against non-signatories to the arbitration agreement. On remand following *GE Energy* (holding that the New York Convention does not conflict with the enforcement of arbitration agreements by non-signatories under domestic-law equitable estoppel doctrines), the panel accepted that a non-signatory could compel arbitration in a New York Convention case. The panel concluded, however, that as a factual matter, the allegations here did not implicate the agreement that contained the arbitration clause—a prerequisite for compelling arbitration under the equitable estoppel framework. Accordingly, the district court did not abuse its discretion in rejecting SS Mumbai's argument that SS Bangalore should be equitably estopped from avoiding arbitration.

Dissenting, Judge Bea would hold that whichever background body of state contract law that governs the arbitration agreement governs equitable estoppel claims to compel arbitration under the Federal Arbitration Act, regardless whether the arbitration agreement is primarily governed by the FAA or the New York Convention, and would remand to the district court for the district court to perform the choice of law analysis in the first instance.

**COUNSEL**

Brian W. Esler and Vanessa L. Wheeler, Miller Nash Graham & Dunn LLP, Seattle, Washington, for Defendant-Appellant.

Scott S. Brown, Mixon Firm LLC, Birmingham, Alabama; Benjamin J. Hodges and Devra R. Cohen, Foster Garvey PLLC, Seattle, Washington; for Plaintiffs-Appellees.

**OPINION**

D.W. NELSON, Circuit Judge:

Shrinivas Sugandhalaya LLP ("SS Mumbai") appeals from the district court's order denying its motion to compel arbitration against Balkrishna Setty and Shrinivas Sugandhalaya (BNG) LLP (collectively, "SS Bangalore") and denying SS Mumbai's motion to grant a stay pending arbitration.

Relying on *Yang v. Majestic Blue Fisheries*, LLC, 876 F.3d 996 (9th Cir. 2017), we previously held that SS Mumbai could not equitably estop SS Bangalore from avoiding arbitration, and thus affirmed the district court's order. *Setty v. Shrinivas Sugandhalaya LLP*, 771 F. App'x 456 (9th Cir. 2019). The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020). *See Shrinivas Sugandhalaya LLP v. Setty*, No. 19-623, 2020 WL 3038281, at *1 (U.S. June 8, 2020).

We have jurisdiction under 9 U.S.C. § 16. We review the denial of a motion to compel arbitration de novo and the

district court's decision regarding equitable estoppel for abuse of discretion. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175, 1179 (9th Cir. 2014). We review the denial of a motion to stay pending arbitration for abuse of discretion. *Alascom, Inc. v. ITT North Elect. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984). We affirm.

The parties dispute whether the law of India or federal common law applies to the question of whether SS Mumbai, a non-signatory to the Partnership Deed containing an arbitration provision, may compel SS Bangalore to arbitrate.

To argue that Indian law applies, SS Mumbai points to the Partnership Deed's arbitration provision. But whether SS Mumbai may enforce the Partnership Deed as a non-signatory is a "threshold issue" for which we do not look to the agreement itself. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016). Moreover, the Partnership Deed's arbitration provision applies to disputes "arising between the partners" and not also to third party such as SS Mumbai. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). We decline to apply Indian law on the basis of the Partnership Deed.

The New York Convention and its implementing legislation emphasize the need for uniformity in the application of international arbitration agreements. *See Certain Underwriters at Lloyd's v. Argonaut Ins. Co.*, 500 F.3d 571, 580–818 (7th Cir. 2007) ("The Supreme Court has recognized that in the context of the *New York Convention*, uniformity of the law is of *paramount* importance" and concluding application of state-specific law would undermine this purpose). In cases involving the New York Convention, in determining the arbitrability of federal claims by or against non-signatories to an arbitration

agreement, we apply "federal substantive law," for which we look to "ordinary contract and agency principles." *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *Casa del Caffe*, 816 F.3d at 1211 (concluding that "[b]ecause this case arises under Chapter 2 of the Federal Arbitration Act, the issue of whether the Commercial Contract constituted a binding agreement is governed by federal common law") (citing *Argonaut Ins. Co.*, 500 F.3d at 577–78).[1]

In *GE Energy*, the Supreme Court specifically concluded, "[w]e hold only that the New York Convention does not conflict with the enforcement of arbitration agreements by non-signatories under domestic-law equitable estoppel doctrines." 140 S. Ct. at 1648. The Court "did not determine whether GE Energy could enforce the arbitration clauses under principles of equitable estoppel or which body

---

[1] This decision comports with First, Second, and Fourth Circuit decisions applying federal common law to threshold issues of arbitrability in New York Convention cases. *See InterGen N.V. v. Grina*, 344 F.3d 134, 143 (1st Cir. 2003) (reasoning, "[i]f the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision."); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (explaining that when the court exercises jurisdiction under Chapter Two of the FAA, it has "compelling reasons to apply federal law, which is already well developed, to the question of whether an agreement to arbitrate is enforceable" and that to conclude otherwise would "introduce a degree of parochialism and uncertainty into international arbitration" and undermine the FAA's goal of simplicity and uniformity.); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen CMBH*, 206 F.3d 411, 413–14 (4th Cir. 2000) (recognizing that the FAA and the New York Convention "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act" and looking to the "federal substantive law of arbitrability" to determine whether a non-signatory was bound by the contract).

of law governs that determination." *Id.* On remand following the Supreme Court's decision in *GE Energy*, we accept that a nonsignatory could compel arbitration in a New York Convention case. We conclude, however, that as a factual matter, the allegations here do not implicate the agreement that contained the arbitration clause—a prerequisite for compelling arbitration under the equitable estoppel framework.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi*, 555 F.3d at 1045 (citation and internal quotation marks omitted). In the arbitration context, the doctrine has generated various lines of cases, including one involving "a nonsignatory seeking to compel a signatory to arbitrate its claims against the nonsignatory." *Id.* at 1046–47. For equitable estoppel to apply, it is "essential . . . that the subject matter of the dispute [is] intertwined with the contract providing for arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). "We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff[.]" *Id.*

Here, the claims have no relationship with the partnership deed containing the arbitration agreement at issue in this appeal. SS Bangalore's claims against SS Mumbai are not clearly "intertwined" with the Partnership Deed providing for arbitration. To be sure, the crux of several claims is that the Partnership, and not SS Mumbai, is the true owner of the disputed marks. But the Partnership does not own the marks because of any provision of the Partnership Deed, but rather because of the Partnership's "prior use" of the marks over several years. Moreover, any allegations of misconduct by Nagraj Setty (a signatory to the

Partnership Deed) are not clearly intertwined with SS Bangalore's claims against SS Mumbai.

Thus, the district court did not abuse its discretion in rejecting SS Mumbai's argument that SS Bangalore should be equitably estopped from avoiding arbitration.

Because the district court did not err in denying SS Mumbai's motion to compel arbitration, it did not abuse its discretion in denying SS Mumbai's motion to stay the proceedings pending arbitration. *See Alascom*, 727 F.2d at 1422.

**AFFIRMED.**

---

BEA, Circuit Judge, dissenting:

On remand from the Supreme Court, we are faced with the question of which equitable estoppel law governs an Indian company's motion to compel another Indian company and its Indian owner to arbitration based on an agreement entered into in India, signed by two Indian brothers (who own the Indian companies), and governing conduct in India and the United States. The majority holds that, not Indian, but U.S. federal common law governs the issue.

I dissent. The Supreme Court and Ninth Circuit have time and again held that whichever background body of state contract law that governs the arbitration agreement governs equitable estoppel claims to compel arbitration pursued under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et*

*seq.*[1]  We should not hold differently here solely because the arbitration agreement is otherwise governed by the New York Convention.

## I

After their father's death, brothers Balkrishna and Nagraj Setty signed a Partnership Deed agreeing to joint ownership of Shrinivas Sugandhalaya, their late father's incense manufacturing company.  The Partnership Deed was "made and entered into at Mumbai [India] on this 24th December 1999."  The Partnership Deed contained an arbitration clause requiring that "[a]ll disputes of any type whatsoever in respect of the partnership arising between the partners either during the continuance of this partnership or after the determination thereof shall be decided by arbitration . . . ."

For a time, the Setty brothers jointly operated their father's company, but soon they decided to split up and operate their own incense manufacturing firms, though still under the same trademark.  Plaintiff-Appellee Balkrishna founded Shrinivas Sugandhalaya (BNG) LLP ("SS Bangalore") operating out of Bangalore, while brother Nagraj founded Shrinivas Sugandhalaya LLP operating out of Mumbai ("SS Mumbai").  Neither SS Bangalore nor SS Mumbai were signatories to the Partnership Deed and its arbitration clause.  Since then, the two brothers and their companies have competed against each other in the incense

---

[1] The Federal Arbitration Act is codified at Title 9, Chapter 1 of the U.S. Code, 9 U.S.C. §§ 1–16.  Chapter Two of this title codifies the Convention Act of 1970 (enforcing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, or "New York Convention").

market, ultimately leading to the present dispute over trademark rights in the United States.

Plaintiff-Appellees Balkrishna and SS Bangalore brought suit against SS Mumbai and its U.S. distributor in federal court in Alabama. The complaint did not name Nagraj Setty (SS Mumbai's owner) as a defendant. Plaintiff-Appellees claimed federal jurisdiction based on the district court's authority to hear federal question, trademark, and supplemental claims. *See* 28 U.S.C. §§ 1331, 1338, 1367; 15 U.S.C. §1121. They claim Defendant-Appellant SS Mumbai committed a number of U.S. federal trademark violations, including that SS Mumbai had fraudulently obtained trademark registrations by falsely claiming no other person had the right to use the Shrinivas Sugandhalaya trademarks. The complaint alleges that SS Mumbai "knew that Plaintiff Shrinivas Sugandhalaya (BNG) LLP was authorized by the Partnership to use the SHRINIVAS SUGANDHALAYA mark in the United States." Plaintiff-Appellees also brought two state law claims based on Alabama common law: tortious interference to its business and unfair competition.

The suit was transferred from the Northern District of Alabama to the Western District of Washington under 28 U.S.C. § 1404(a). SS Mumbai moved to dismiss or stay the case in favor of arbitration, arguing that Plaintiff-Appellees should be equitably estopped from avoiding the arbitration clause present in the Partnership Deed. The district court denied the motion, ruling against SS Mumbai's claim of equitable estoppel. The district court did not address the question of which law of equitable estoppel should apply. Instead, the court analyzed the equitable

estoppel claim under generalized estoppel doctrine drawn from Ninth Circuit cases.[2]

On appeal, we affirmed the district court. *See Setty v. Shrinivas Sugandhalaya LLP*, 771 F. App'x 456 (9th Cir. 2019) (unpublished), *cert. granted, judgment vacated*, 141 S. Ct. 83 (2020). However, rather than affirm on the merits of the equitable estoppel claim, we held instead that nonsignatory SS Mumbai was barred from compelling arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") as interpreted by *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017). *Setty*, 771 F. App'x at 457. SS Mumbai sought and obtained certiorari from the Supreme Court, which vacated our prior decision and remanded the case in light of its decision in *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020), which overruled *Yang. See Setty*, 141 S. Ct. at 83.

## II

Before the panel can answer whether we should reverse the district court's denial of SS Mumbai's motion to compel arbitration on the basis of equitable estoppel, we must first resolve the choice of law issue.[3] The majority asserts federal

---

[2] The district court cited to both *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (applying California state equitable estoppel doctrine) and *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (applying Washington state equitable estoppel doctrine).

[3] In *GE Energy*, the Supreme Court noted that the choice-of-law issue remained an open question:

common law governs. I disagree. As we will see, the Supreme Court has made clear that state substantive law governs equitable estoppel claims pursued under the FAA. The Supreme Court has now ruled that nonsignatories to arbitration agreements governed by the New York Convention are not precluded from compelling arbitration under the FAA. That the agreement is otherwise governed by the New York Convention should not alter the choice of law doctrine established by the Supreme Court.

**A**

1

The FAA ensures covered arbitration agreements are held "valid, irrevocable, and enforceable." 9 U.S.C. § 2. We have held that this substantive mandate permits federal substantive law rather than state law to govern certain issues arising in litigation involving the FAA, most notably, the scope of arbitration provisions. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) ("[T]he scope of the arbitration clause is governed by federal law.").

---

> Because the Court of Appeals concluded that the Convention prohibits enforcement by nonsignatories, the court did not determine whether GE Energy could enforce the arbitration clauses under principles of equitable estoppel or *which body of law governs that determination. Those questions can be addressed on remand*. We hold only that the New York Convention does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines.

140 S. Ct. at 1648 (emphasis added).

That said, federal substantive law does not govern all questions arising under the FAA.  The Supreme Court in *Arthur Andersen LLP v. Carlisle* held that the FAA did not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)."   556 U.S. 624, 630 (2009).   Rather, application of "traditional principles of state law" is permitted under the FAA to "allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* at 631 (citations omitted).

And so, for arbitration agreements entered into in the United States, we have applied "relevant state contract law" and not federal common law to the issue whether a nonsignatory may compel arbitration under a theory of equitable estoppel.  *Id.* at 632 ("We hold . . . that a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement."); *GE Energy*, 140 S. Ct. at 1643 ("Chapter 1 of the Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements.").

Since *Arthur Andersen*, the Ninth Circuit has repeatedly applied state contract law any time a nonsignatory has sought to compel arbitration under the FAA.  In *Kramer v. Toyota Motor Corp.*, we acknowledged that "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.  We therefore look to California contract law to determine whether . . . a nonsignatory[] can compel arbitration." 705 F.3d 1122,

1128 (9th Cir. 2013) (citing *Arthur Andersen*, 556 U.S. at 632).

We reaffirmed that proposition in *In re Henson*, 869 F.3d 1052 (9th Cir. 2017).   There, as here, a nonsignatory defendant sought to compel arbitration against a plaintiff (who had agreed to arbitrate with a third party) under the theory of equitable estoppel. *Id.* at 1056–57.  In granting a writ of mandamus, we held that state law applies to the issue whether equitable estoppel is available, and that when determining which state law governs "whether [a] nonsignatory[] can compel arbitration under the doctrine of equitable estoppel," "we apply the choice-of-law principles of the forum state." *Id.* at 1059.

Indeed, even this panel had agreed that "[u]nder the FAA, a non-signatory may invoke arbitration *if state law permits*." *Setty*, 771 F. App'x at 456 (emphasis added).  But that decision has been vacated by the Court.

Thus, under both Supreme Court and our own precedent (including this panel's since-vacated original decision), equitable estoppel claims pressed by nonsignatories under the FAA are governed by state law.  Up until today, we did not need to apply this principle to arbitration agreements governed by the New York Convention.  But with the Supreme Court's decision overruling *Yang*, this is the question now before the panel.

2

"The New York Convention is a multilateral treaty that addresses international arbitration," ensuring that foreign arbitral awards are recognized in each of the ratifying countries and that foreign-based arbitration agreements are

enforceable.[4]  *GE Energy*, 140 S. Ct. at 1644.  Congress statutorily implemented the New York Convention within Title 9, Chapter 2 of the U.S. Code.  9 U.S.C. §§ 201 *et seq.* In so doing, however, Congress ensured that the FAA (Chapter 1) would still apply to actions and proceedings brought pursuant to arbitration agreements covered by the New York Convention, except for any provision within Chapter 1 that conflicts with the New York Convention.  9 U.S.C. § 208 ("Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States."); *GE Energy*, 140 S. Ct. at 1644.

In *Yang*, we addressed whether the FAA's clause permitting nonsignatories to compel arbitration under equitable estoppel and other traditional contract law theories described in *Arthur Andersen* conflicted with the New York Convention.  *Yang*, 876 F.3d at 1002–03.  We held that it did, and that nonsignatories were barred from using the FAA to compel arbitration if the relevant arbitration agreement was governed by the New York Convention.  *Id.*  Relying on *Yang*, this panel held in our first decision that because SS Mumbai was a nonsignatory to Balkrishna and Nagraj's Partnership Deed and its arbitration clause, and because that agreement was governed by the New York Convention, SS Mumbai was not entitled to pursue a theory of equitable estoppel that relied on the FAA.  *Setty*, 771 F. App'x at 456.

However, the Supreme Court has since overruled *Yang*, holding instead that the New York Convention did not conflict with "the application of domestic equitable estoppel

---

[4] A commercial arbitration agreement is governed under the New York Convention and Title 9, Chapter 2 of the U.S. Code unless it "is entirely between citizens of the United States" and does not reasonably relate to one or more foreign states.  9 U.S.C. § 202.

doctrines permitted under Chapter 1 of the FAA." *GE Energy*, 140 S. Ct. at 1645–46. Thus, *Yang*'s restriction barring nonsignatories to agreements governed by the New York Convention from compelling arbitration as permitted under the FAA has been lifted.

## B

On remand, this case raises a question we neither considered nor answered in the earlier appeal: what law applies to equitable estoppel claims pursued under the FAA for those arbitration agreements otherwise governed by the New York Convention. This is not a difficult issue, but it is the basis for this dissent.

Pursuant to *GE Energy*, nonsignatories to New York Convention-governed arbitration agreements are now authorized to compel arbitration using domestic contract law doctrines. In ruling that the New York Convention did not conflict with this provision of the FAA, *GE Energy* merely removed an obstacle that had prevented application of existing FAA doctrine. *GE Energy* did not alter the familiar framework of *Arthur Andersen*, *Kramer*, or *In re Henson* in any way.

I would hold, simply, that whether a particular contract is governed by the New York Convention or not, a nonsignatory's equitable estoppel claim to compel arbitration is brought pursuant to the FAA, which requires that state contract law (or in the case of a foreign contract, perhaps the foreign state's contract law, depending on the state's choice of law rules) govern the issue.

After all, it is only because of the provisions of the FAA that nonsignatories are even permitted to compel arbitration using equitable estoppel. The New York Convention does

not speak to the issue. *GE Energy*, 140 S. Ct. at 1645 ("The Convention is simply silent on the issue of nonsignatory enforcement . . . ."). Instead, the New York Convention instructs us to apply nonconflicting FAA law "to actions and proceedings brought under" the New York Convention. 9 U.S.C. § 208. *GE Energy* states that the FAA's provisions permitting equitable estoppel claims do not conflict with the New York Convention. *GE Energy*, 140 S. Ct. at 1645 ("[N]othing in the text of the [New York] Convention conflicts with the application of domestic equitable estoppel doctrines permitted under Chapter 1 of the FAA." (citations omitted)). And, under *Arthur Andersen*, the Supreme Court's interpretation of the FAA directs that the domestic background principles of contract law—*i.e.*, state contract law—govern equitable estoppel claims. *See supra* § II.A.1. Logically then, state contract law governs equitable estoppel claims even for international arbitration agreements because those claims still rely on the provisions of the FAA, which are not made inapplicable by the New York Convention. In the interests of uniformity of application of law, I see no reason to hold that settled FAA law should somehow apply differently to nonsignatories of agreements otherwise governed by the New York Convention.

Here, the relevant contract law that governs the Partnership Deed should govern SS Mumbai's equitable estoppel claim. But the majority holds that federal law governs because the contract is also subject to the New York Convention. According to the majority, we should impose federal law even on American parties to arbitration agreements and ignore the domestic contract law upon which the particular arbitration agreement was formed.

## C

The majority holds that "[i]n cases involving the New York Convention, in determining the arbitrability of federal claims by or against non-signatories to an arbitration agreement, we apply federal substantive law."  First, there is no basis to make the choice of law analysis for a motion to compel arbitration dependent on whether the plaintiff's claims sound in federal or state law.  Second, that an arbitration agreement is otherwise governed by the New York Convention is irrelevant to the choice of law determination for a nonsignatory's equitable estoppel claim.

For the proposition that the federal nature of a plaintiff's claims dictates that federal substantive law governs equitable estoppel claims, the majority relies on *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986).  Such reliance on *Letizia* is misplaced.  *Letizia* was a securities fraud case decided in 1986 wherein Letizia, who had invested in Prudential Bache and signed an arbitration agreement with that defendant, sued Prudential Bache as well as Prudential Bache's nonsignatory employees for fraud. *Id.* at 1186–87.  The nonsignatory employees sought arbitration under the agreement that Letizia and Prudential Bache signed.  At that time, we determined that federal substantive law applies to the question of whether the nonsignatories may enforce that agreement:

> "Because the issue involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law. *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1025 (9th Cir. 1986)."

*Letizia*, 802 F.2d at 1187.  *Letizia* held that all issues arising in arbitration disputes are governed by federal substantive

law.  To be sure, the FAA provides a substantive mandate ensuring the "enforceability of arbitration agreements" and that in applying this mandate, we are applying "substantive federal law." *Arthur Andersen*, 556 U.S. at 630.  However, as discussed above, the Supreme Court has in effect abrogated *Letizia*'s broad holding by making clear that the FAA does not allow federal courts to apply federal common law to all questions in disputes involving arbitration.  The Supreme Court stated quite clearly that "state law . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* at 630–31.  The majority's reliance on *Letizia* to hold otherwise is entirely inconsistent with the Supreme Court's holding in *Arthur Andersen*.

Even if it were not abrogated, the majority's citation to *Letizia* to hold that subject matter jurisdiction has bearing on whether federal or state substantive law governs equitable claims is not supported by *Letizia*'s holding.  *Letizia* itself held that *all* issues involving the arbitrability of a dispute are controlled by federal substantive law.  *See Letizia*, 802 F.2d at 1187.  It did not differentiate between cases brought pursuant to federal question or diversity jurisdiction.  Neither the Supreme Court's nor our own cases have ever relied on the subject matter jurisdiction or the nature of the claims in holding that state law governs equitable estoppel under the FAA.  That claimed distinction is novel to the majority.  In fact, our precedents demonstrate no qualms in applying state law to nonsignatory enforcement of arbitrability of federal claims.  *See, e.g.*, *Rajagopalan*, 718 F.3d at 846–48 (applying state law equitable estoppel law to resolve nonsignatory enforcement of arbitration against all of plaintiff's claims, which included federal

Racketeer Influenced and Corrupt Organizations Act ("RICO") claims); *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058, 1070 (9th Cir. 2020) (same).

For the proposition that federal substantive law applies to all questions arising from international arbitration agreements, majority cites *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208 (9th Cir. 2016), but that case is not applicable here, in no small measure because that case did not pertain to equitable estoppel claims. In *Casa del Caffe*, we examined whether an international arbitration agreement governed by the New York Convention was a valid contract; there was no claim by any nonsignatories seeking to compel arbitration by way of domestic contract doctrines. In determining choice of law, we stated: "Because this case arises under Chapter 2 of the Federal Arbitration Act, the issue of whether the Commercial Contract constituted a binding agreement is governed by federal common law." *Id.* at 1211. But here, unlike the issue in *Casa del Caffe*, whether a nonsignatory may compel arbitration under principles of equitable estoppel relies on the FAA, even if interpretation and enforcement of the arbitration agreement by its signatories is governed by the New York Convention. *See GE Energy*, 140 S. Ct. at 1643. *Casa del Caffe* was decided prior to the Supreme Court's decision in *GE Energy*, which must guide our analysis here. Indeed, when *Casa del Caffe* was decided, *Yang* still barred non-signatory litigants from even raising equitable estoppel claims pursuant to the FAA if the arbitration agreement was governed by the New York Convention. *Casa del Caffe* did not profess to interpret *Arthur Andersen* and is not a helpful source in determining whether *Arthur Andersen*'s rule applies to equitable estoppel claims to New York Convention arbitration agreements.

As to the majority's concern for uniformity in applying arbitration agreements under the New York Convention, that interest is not implicated here. First, each of the out-of-circuit cases upon which the majority relies predates *Arthur Andersen*. Those cases, it should be obvious, cannot support the conclusion that some exception exists for agreements under the New York Convention to *Arthur Andersen*'s holding that state law governs equitable estoppel claims. *See InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003); S*mith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen CMBH*, 206 F.3d 411 (4th Cir. 2000); *Certain Underwriters at Lloyd's v. Argonaut Ins. Co.*, 500 F.3d 571 (7th Cir. 2007).

Second, any preference that may exist for uniformity *as to the interpretation and enforcement* of the international agreements by their signatories would not be disturbed by the uniform application of FAA law under *Arthur Andersen*. We must remember that this case concerns the "application of domestic equitable estoppel doctrines" to international arbitration agreements—which is to say this whole enterprise is definitionally governed by parochial doctrines where a certain amount of nonuniformity comes with the territory. *GE Energy*, 140 S. Ct. at 1645. But more to the point, equitable estoppel claims are conceptually different than the interpretation and enforcement of the arbitration agreements themselves by the parties. We can and have distinguished between application of these domestic doctrines and the conservation of the uniformity of enforcement of arbitration agreements akin to what is advocated by the cases the majority cites. For example, we have distinguished between questions concerning the scope of domestic arbitration agreements (including construction of the contract language or applicability of defenses) on the

one hand and their enforcement by nonsignatories through doctrines such as equitable estoppel on the other. *Kramer*, 705 F.3d at 1126, 1128 (holding that, although "[t]he scope of an arbitration agreement is governed by federal substantive law," equitable estoppel claims are governed by "state contract law"). The Supreme Court in *GE Energy* reinforced the idea that New York Convention did not fundamentally supplant our domestic contract doctrines. *Id.* ("[T]he Convention requires courts to rely on domestic law to fill the gaps; it does not set out a comprehensive regime that displaces domestic law."). The conclusion we should draw is that, to the extent uniformity is a primary concern for agreements under New York Convention, it is not so paramount that we should jettison the reasonable choice of law rules handed down by *Arthur Andersen* and *GE Energy*.

Finally, I note with confusion the majority's paean to uniformity of application of arbitration law when the rule it advances arbitrarily treats equitable estoppel claims made pursuant to domestic arbitration agreements differently than those made pursuant international agreements. Uniformity would be better served by treating domestic and international parties alike when they seek justice in the United States.

## III

Because SS Mumbai's motion is brought pursuant to the FAA, the Supreme Court and Ninth Circuit precedents governing this question should be adequate to resolve this issue. Indeed, before the panel is a familiar question: what law governs a claim by a nonsignatory to compel arbitration using domestic equitable estoppel law permitted by the FAA? The Supreme Court in *Arthur Andersen* determined that a litigant who was not a party to an arbitration agreement may invoke the FAA "if the relevant state contract law allows him to enforce the agreement." 556 U.S. at 632.

Therefore, I would hold that claims to compel arbitration under the FAA are governed by the domestic contract law of the relevant state or country, regardless whether the arbitration agreement is primarily governed by the FAA or the New York Convention. We should remand to the District Court for it to apply the appropriate choice of law rule.

I respectfully dissent.