**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3143

JIANGSU BEIER DECORATION MATERIALS CO., LTD.,
Appellant

v.

ANGLE WORLD LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-21-cv-02845)
U.S. District Judge: Honorable Anita B. Brody
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
On September 21, 2022

Before: AMBRO, RESTREPO, and FUENTES, *Circuit
Judges*

(Filed: November 3, 2022)
_____

Richard A. Kaye
Barnes & Thornburg, LLP
3475 Piedmont Road, N.E., Suite 1700
Atlanta, Georgia 30305

William J. Burton
Barnes & Thornburg, LLP
1000 N. West Street, Suite 1500
Wilmington, DE 19801

 *Counsel for Appellant Jiangsu Beier Decoration Materials Co., Ltd.*

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103

Brian M. Gargano
Jiangang Ou
Archer & Greiner, P.C.
3040 Post Oak Blvd, Suite 1800
Houston, TX 77056

 *Counsel for Appellee Angle World LLC*

————————————

OPINION OF THE COURT
————————————

**FUENTES**, *Circuit Judge*.

Appellant Jiangsu Beier Decoration Materials Co., Ltd. ("Jiangsu"), a China-based manufacturer, obtained an arbitration award in China against Appellee Angle World LLC ("Angle World"), a Pennsylvania-based distributor. Jiangsu seeks to enforce its foreign arbitration award in the United States, but Angle World claims that it never agreed to arbitrate. This case requires us to examine the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), an international treaty that permits the recipient of a foreign award to petition a United States district court for confirmation.[1]

The District Court dismissed Jiangsu's confirmation petition after determining that Jiangsu failed to prove that Angle World agreed to arbitrate the parties' underlying dispute. For the reasons set forth herein, we will vacate the District Court's order of dismissal and remand this case for further proceedings. We take no position on the ultimate question of arbitrability.

---

[1] June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997. The New York Convention was initially adopted in 1958 "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 282 (3d Cir. 2003) ("*China Minmetals*") (quoting *Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). The United States and China are signatories to the New York Convention. N.Y. Convention, art. XVI.

## I. Factual Background

### A. The Underlying Dispute

Jiangsu is a manufacturer of flooring products based in China. Angle World is a distributor based in Pennsylvania. In 2016, Jiangsu and Angle World agreed that Angle World would serve as Jiangsu's exclusive distribution agent in the United States. Jiangsu claims that, as of June 2018, Angle World owed it over $1.3 million under the distribution agreement. Angle World disputed Jiangsu's claim, and the parties attempted to negotiate a settlement.

On June 28, 2018, the parties agreed to a written and signed memorandum of understanding, under which Angle World agreed to pay Jiangsu $528,227.59 within six months (the "June MOU").[2] The June MOU did not contain an arbitration clause. On July 10, 2018, a representative from Jiangsu sent Angle World a revised agreement via email (the "July MOU"). Unlike its predecessor, the July MOU included an arbitration clause, providing as follows:

> Any dispute arising from this Memorandum of Understanding shall be settled by and between the two Parties through friendly negotiation. If the dispute cannot be settled through negotiation, the two Parties shall submit the dispute to the China International Economic and Trade Arbitration Commission Shanghai Sub-

---

[2] The parties acknowledge that they both signed the June MOU.

Commission for arbitration according to the arbitration rules of the Sub-Commission. The place of arbitration shall be Shanghai. The arbitration ruling shall be final and binding on the two Parties, and the losing Party shall compensate the winning Party for the arbitration cost and attorney's fee.[3]

After Jiangsu sent a draft of the July MOU to Angle World, the parties allegedly met in person in China to continue negotiations. On July 19, 2018, Jiangsu emailed Angle World an amended version of the July MOU with a revised payment schedule. Angle World's president, Biao Wang ("Wang"), responded with the following email:

It has not been written in accordance with our negotiation.

It has exceeded the scope of my capacity in terms of negotiating with both parties.

Following the legal procedure, once Jason[4] has provided a final response, we will not make further changes or accept any amendment suggestions.[5]

---

[3] SAppx91–92.

[4] "Jason" appears to be Angle World's Chief Operating Officer, Jason Pyon.

[5] SAppx240. Angle World has moved to supplement the appellate record with an affidavit by Wang that, due to a technical filing issue, was not available to the District Court at

5

What happened next is not entirely clear. A Jiangsu representative initially attested that the parties held another in-person meeting, that Wang signed a copy of the July MOU, and that Jiangsu then sent a copy of the signed agreement to Angle World via courier service. However, Jiangsu has since conceded before the District Court and on appeal that Angle World never signed the July MOU. The parties exchanged emails on July 26 and 27, 2018 indicating that they had agreed to a payment schedule. Yet, these emails do not reference the July MOU or any other prior agreement. In subsequent emails between the parties in August and September 2018, Jiangsu repeatedly asked Angle World to forward the "signed agreement." Angle World never acknowledged these requests.

Angle World states that from July to September 2018, it understood that the June MOU remained in effect, as modified by the later agreed-upon payment schedule. Nonetheless, Angle World ultimately made only two of the six scheduled payments to Jiangsu.[6]

---

the time of its decision. Dkt. 22. As we find that inclusion of Wang's affidavit would not affect our disposition of this appeal, Angle World's motion to supplement is denied as moot. Angle World may present Wang's affidavit to the District Court upon remand in accordance with this Court's instructions below.

[6] Angle World claims that it ceased payments upon discovering that Jiangsu had breached the distribution agreement between the parties.

### B. The Chinese Arbitration

In May 2019, Jiangsu initiated arbitration against Angle World before the China International Economic and Trade Arbitration Commission ("CIETAC"). Angle World objected to CIETAC's jurisdiction over the dispute, and the matter was referred to the Beijing Fourth Intermediate People's Court (the "Chinese Court") to determine arbitrability. The Chinese Court found that the July MOU, and the arbitration clause contained therein, were enforceable under Chinese law because, among other things, "the parties entered into or modified the contracts by email during the course of long-term business," and "the [July MOU] was an adjustment and supplement to the [June MOU]."[7]

The CIETAC arbitration panel adopted the Chinese Court's decision and also independently determined that the July MOU was enforceable under both the United Nations Convention on the International Sale of Goods ("CISG")[8] and Chinese law. On March 11, 2021, the panel ruled in favor of Jiangsu on the merits of the dispute, finding that Angle World had breached the July MOU by failing to make all payments required thereunder. The panel ordered Angle World to pay $624,227.59 for the breach, plus attorney fees (the "Foreign Award").[9]

---

[7] SAppx157.

[8] Apr. 10, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.LM. 668 (1980).

[9] One member of the arbitration panel dissented from the award after concluding that the parties had never agreed to the July MOU or its arbitration provision.

7

## II.    Procedural History

Jiangsu filed the petition before us in the United States District Court for the Eastern District of Pennsylvania on June 25, 2021, seeking confirmation of the Foreign Award pursuant to the New York Convention (the "Petition"). The Petition alleged that "[o]n or about July 10, 2018, after various drafts and negotiations," Angle World and Jiangsu agreed to an MOU in which they "agreed to settlement of trade transaction disputes between them."[10]  The Petition attached copies of the Foreign Award and the unsigned July MOU.  It did not reference any of the emails exchanged between the parties from July to September 2018.

Angle World then moved to dismiss the Petition under Federal Rule of Civil Procedure 12(b)(6).  Angle World argued that Jiangsu did not demonstrate the existence of an arbitration agreement enforceable under the New York Convention and that, consequently, the District Court could not enforce the Foreign Award.  Jiangsu argued in opposition, among other things, that the District Court should defer to the Chinese Court's finding of arbitrability and that the parties' email correspondence created an enforceable arbitration agreement. The parties submitted several exhibits in connection with their briefing on the motion to dismiss, including the July-September 2018 email exchanges discussing the MOUs and payment schedules.

The District Court granted Angle World's motion and dismissed the Petition.  In an opinion dated October 28, 2021,

_____

[10] SAppx2.

8

the Court found that Jiangsu failed to produce an arbitration agreement enforceable under the New York Convention because Angle World never signed the July MOU and Jiangsu did not otherwise prove Angle World's agreement to arbitrate. The Court further held that it was not bound by the prior rulings of the Chinese Court or CIETAC because (1) neither Chinese tribunal determined whether the July MOU was enforceable under the New York Convention; and (2) under Third Circuit law, the Court had an independent duty to assess whether there was an enforceable agreement to arbitrate before confirming the Foreign Award. Jiangsu timely appealed.

## III.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331 and 9 U.S.C § 203. This Court has jurisdiction under 28 U.S.C. § 1291. On review of a petition to confirm an arbitration award, this Court reviews a district court's factual findings for clear error and its legal conclusions *de novo*.[11] We review *de novo* a district court's interpretation of the New York Convention.[12]

---

[11] *China Minmetals*, 334 F.3d at 278 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995)).

[12] *Admart AG v. Stephen and Mary Birch Found.*, 457 F.3d 302, 307 (3d Cir. 2006).

## IV.   Discussion

The New York Convention, as implemented by Chapter 2 of the Federal Arbitration Act ("FAA"),[13] permits the recipient of a foreign arbitration award to petition a district court to enforce it.[14]   Before confirming a foreign award, however, a district court must independently assure itself that the parties consented to arbitrate the merits of their underlying dispute.[15]   The District Court performed this inquiry and found consent lacking with respect to the July MOU—the only document in the record containing an arbitration provision.

Jiangsu argues on appeal that the District Court erred in reaching this conclusion for two reasons.   First, it argues that even though Angle World never signed the July MOU, the record before the District Court—specifically, an email exchange between the parties—shows that Angle World nonetheless consented to arbitrate.   Second, Jiangsu contends that the District Court should have deferred to the conclusions of Chinese tribunals that the July MOU was enforceable.   We will address each argument in turn and, ultimately, remand for further proceedings to assess whether the parties' email correspondence created a valid arbitration agreement under the New York Convention.

---

[13] 9 U.S.C. §§ 201–208.

[14] N.Y. Convention, art. I; 9 U.S.C. §§ 203, 207.

[15] *China Minmetals*, 334 F.3d at 289.

## A. Enforceability of a Foreign Arbitration Award

The New York Convention requires signatories to recognize a written arbitration agreement that is "contained in an exchange of letters" between the parties.[16] Jiangsu claims that its email correspondence with Angle World created an "exchange of letters" enforceable under the Convention and that the District Court erred by holding to the contrary. But before assessing the District Court's decision, we must pause to discuss the unusual procedural mechanisms and substantive requirements applicable to confirmation proceedings under the New York Convention and Chapter 2 of the FAA.

### 1. Proceedings under the New York Convention and FAA

Many of the ordinary procedural rules governing civil litigation are inapplicable to petitions under the New York Convention. This is because, by statute, an application to confirm a foreign arbitration award must "be made and heard in the manner provided by law for the making and hearing of motions."[17] Thus, "a petition to confirm an arbitration award

---

[16] N.Y. Convention, art. II.

[17] 9 U.S.C. § 6. We must navigate a small labyrinth of provisions to reach this initial conclusion. First, the New York Convention provides that "the rules of procedure of the territory where the award is relied upon" apply to confirmation proceedings. N.Y. Convention, art. III. Second, Federal Rule of Civil Procedure 81(a)(6)(B) states that the Federal Rules govern arbitration proceedings except to the extent that the

. . . is 'a motion, not a pleading.'"[18] We have therefore stressed that the Federal Rules of Civil Procedure governing pleadings, including "the pleading standards set forth in Rule 12 . . . are inapplicable to FAA motions."[19]

FAA petitions instead result in "summary proceedings that do not require [a] district court to carry on a formal judicial proceeding."[20] The court may review the documents presented by the parties and often "can, within its discretion, decide an FAA motion without conducting a full hearing or taking additional evidence."[21] In other cases, further proceedings may

---

FAA "provide[s] other procedures." Fed. R. Civ. P. 81(a)(6)(B). Third, Chapter 1 of the FAA applies to proceedings brought under the New York Convention "to the extent that chapter is not in conflict with [Chapter 2] or the [New York] Convention." 9 U.S.C. § 208. Finally, 9 U.S.C. § 6 falls within Chapter 1 of the FAA, is not superseded by Chapter 2 of the FAA or the New York Convention, and therefore applies to this proceeding.

[18] *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 243 (3d Cir. 2021) (quoting *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 308 (3d Cir. 2006)).

[19] *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313 (3d Cir. 2021); *see also CPR Mgmt., S.A.*, 19 F. 4th at 243 & n.5; *IFC Interconsult AG*, 438 F.3d at 308–09.

[20] *CPR Mgmt., S.A.*, 19 F.4th at 244 (cleaned up) (citing *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 255 (3d Cir. 2020)).

[21] *PG Publ'g, Inc.*, 19 F.4th at 314.

be necessary to resolve a material factual dispute.[22] At bottom, a district court must determine the merits of a confirmation petition on the record before it, and its review is not necessarily limited to factual allegations in the petition itself.

Substantively, the FAA provides that a court "shall confirm" a foreign arbitration award falling under the New York Convention[23] "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention."[24] We look to the text of the treaty to determine when a court may decline to recognize or enforce a foreign arbitration award.[25]

The plain language of the New York Convention subjects confirmation petitions thereunder to a burden-shifting framework. First, Article IV requires the party seeking "recognition and enforcement" of an award to make a threshold showing by supplying, "at the time of the application,"

---

[22] *See, e.g.*, *China Minmetals*, 334 F.3d at 289–90 (directing district court "to conduct such further proceedings as may be appropriate" to resolve an "apparent dispute of facts" bearing on the validity of an arbitration agreement under the New York Convention).

[23] Neither party disputes that the Foreign Award falls under the New York Convention.

[24] 9 U.S.C. § 207.

[25] *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text.").

certified copies of (a) the arbitration award and (b) the "agreement referred to in article II."[26]  Second, Article V permits the party resisting recognition and enforcement to avoid confirmation by furnishing proof of one of five affirmative defenses, including that "the agreement referred to in article II" is invalid "under the law of the country where the award was made."[27]

Article II, in turn, provides that each signatory country shall recognize "an agreement in writing under which the parties [agreed] to submit to arbitration."[28]  The treaty defines the phrase "agreement in writing" to include "an arbitral clause in a contract [that is] . . . signed by the parties or contained in an exchange of letters or telegrams."[29]  Reading Articles II and IV together, proof of "the agreement referred to in article II," i.e., an "agreement in writing," is an essential prerequisite to the recognition and enforcement of an award under the New York Convention.[30]  Jiangsu claims it satisfied this requirement

---

[26] N.Y. Convention, art. IV.

[27] *Id.*, art. V(1).  A court may also reject a petition if recognition or enforcement of the award would be contrary to domestic law or public policy.  *Id.*, art. V(2).

[28] *Id.*, art. II.

[29] *Id.*; *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449–50 (3d Cir. 2003) (holding that an arbitration clause incorporated by reference in a contract contained in an exchange of letters was enforceable under the New York Convention).

[30] In *China Minmetals*, the Court suggested in dicta that Article V of the New York Convention, which lists affirmative

through proof that Angle World agreed to the unsigned July MOU through an "exchange of letters."

The New York Convention does not define the phrase "exchange of letters." Fundamentally, such an exchange must at minimum demonstrate an "agreement" between the parties, that is, a manifestation of mutual assent to be bound by a contract containing an arbitration clause.[31] Beyond this uncontroversial statement, however, courts must determine the existence of an agreement by reference to "background

defenses to enforcement, did not incorporate "Article II's valid written agreement requirement." 334 F.3d at 286 & n.13. Then-Judge Alito joined the Court's opinion but wrote a concurrence to emphasize that a court must reject a confirmation petition if the petitioner fails to satisfy the prerequisites of Article IV—which does incorporate Article II's written agreement requirement. *Id.* at 292–94 (Alito, J., concurring).

We find Justice Alito's textual analysis persuasive for the reasons discussed above and join our sister circuits that have concluded a party must supply proof of a written agreement to obtain enforcement under the New York Convention. *See Reddy v. Buttar*, 38 F.4th 393, 399 (4th Cir. 2022); *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1023 (9th Cir. 2021); *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004).

[31] *See, e.g.*, *Agreement*, Black's Law Dictionary (11th ed. 2019).

principles of . . . contract law," to the extent those principles do not conflict with the New York Convention.[32]

With these general procedural and substantive guidelines governing the New York Convention in mind, we will next examine the decision of the District Court.

### 2. *The District Court's Decision*

Having clarified the scope of a court's review of petitions under the New York Convention, we now turn to

---

[32] *GE Energy*, 140 S. Ct. at 1643–44 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) and 9 U.S.C. § 208). The Supreme Court explained in *GE Energy* that "the provisions of Article II contemplate the use of domestic doctrines to fill gaps in the [New York] Convention," but declined to determine "which body of law" courts should apply. *Id.* at 1645, 1648; *see also, e.g.*, *Standard Bent Glass*, 333 F.3d at 444 n.7 (interpreting arbitration agreement between Pennsylvania buyer and Finnish manufacturer under Pennsylvania law because "performance occurred in Pennsylvania" and neither party suggested that the CISG applied to the parties' dispute); *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 & n.1 (9th Cir. 2021) (applying "federal common law to threshold issues of arbitrability in New York Convention cases").

The parties have not briefed this issue, and we need not address it to resolve this appeal. It may very well be that under the facts of this case, the choice of law does not materially affect the result. In any case, we leave such determinations to the District Court in the first instance.

Jiangsu's argument that the District Court failed to properly analyze whether the emails between the parties created an enforceable "exchange of letters" under the New York Convention. We agree that the District Court did not properly conduct this analysis and will therefore vacate the order of dismissal and remand for further proceedings.

As an initial matter, several procedural anomalies affected the proceedings below. After Jiangsu filed the Petition, Angle World moved to dismiss it under Rule 12(b)(6), which does not apply to FAA proceedings.[33] During the ensuing motion practice, the parties submitted evidence far outside the four corners of the Petition, which is ordinarily improper on a Rule 12(b)(6) motion to dismiss.[34] The District Court then granted Angle World's motion and dismissed the Petition without fully setting out the legal standard it used to evaluate the motion.

These irregularities may have been harmless. At the time it rendered its decision, it appears that the District Court had an evidentiary record before it, including emails submitted by the parties. The District Court also stated that it considered Jiangsu's argument that Angle World agreed to the July MOU through a "combination of their correspondence and conduct" but found that "[Jiangsu] has not produced any exchange of letters showing Angle World's agreement to arbitrate."[35] However, the Court performed little analysis to reach this

---

[33] *PG Publ'g, Inc.*, 19 F.4th at 313–14.

[34] *See, e.g.*, *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019).

[35] Appx8.

17

conclusion, and it is unclear whether it indeed considered any evidence outside the Petition.

Notably, the only two documents referenced in the District Court's opinion—the Foreign Award and the July MOU—were attached as exhibits to the Petition. The Court did not cite to or reference any of the evidence submitted with the parties' motion papers, and we are simply unable to tell whether it merely found that evidence unpersuasive or whether it limited its review to the four corners of the Petition. Crucially, the opinion did not explain its implicit conclusion that Angle World's electronic "exchange of letters" was insufficient to manifest assent to the July MOU, nor did it explain the extent to which, if at all, background principles of contract law factored into that conclusion.

As these determinations may require some degree of factfinding, we conclude that the best course is to vacate the order of dismissal and remand for the District Court to address them in the first instance.[36] On remand, Jiangsu may file a

---

[36] We disagree with Jiansgu's suggestion that our decision in *Standard Bent Glass* requires an outright reversal of the District Court in this case. There, we held that a domestic buyer agreed to an arbitration clause that was incorporated by reference in a foreign manufacturer's form sales agreement. 333 F.3d at 446–48. The buyer had objected to several provisions in the agreement other than the arbitration clause, but had otherwise agreed to it, and we held that this was both an "acceptance" of the arbitral clause under Pennsylvania's Uniform Commercial Code and an "exchange of letters" under the New York Convention. *Id.* at 447, 449–50.

renewed motion to confirm the Arbitration Award supported by record evidence, and Angle World may respond in kind. The Court may exercise its discretion to resolve Jiangsu's petition on the papers, or it may conduct any further proceedings it deems necessary, mindful that a confirmation petition presents a limited inquiry that typically should not "develop into full scale litigation."[37]

## B.     Deference to Chinese Tribunals

We last address Jiangsu's arguments that the District Court was bound by prior decisions of the CIETAC and Chinese Court declaring the July MOU enforceable, and that Angle World effectively waived its right to relitigate arbitrability by participating in the Chinese proceedings. We disagree with each contention.

First, Chapter 2 of the FAA requires a district court "to determine independently the existence of an agreement to arbitrate even though an arbitration panel in a foreign state already had rendered an award."[38] A court need not, and should not, defer to a foreign panel's finding of arbitrability because this would "render the prerequisites to enforcement of

---

Here, by contrast, it is not clear that Pennsylvania law applies, and there is record evidence that could be read to suggest that, unlike in *Standard Bent Glass*, Angle World at least initially rejected the terms of the July MOU. Consequently, *Standard Bent Glass* does not necessarily dictate the outcome here.

[37] *PG Pub'g, Inc.*, 19 F.4th at 314 (citation omitted).

[38] *China Minmetals*, 334 F.3d at 284.

an award set forth in Article IV [of the New York Convention] superfluous" and make them "a meaningless formality."[39]

Second, the Chinese Court determined that the July MOU was enforceable under Chinese domestic law but did not analyze the separate issues of (a) whether an arbitration award would be subject to confirmation in a foreign nation under Article IV of the New York Convention or (b) whether the parties' email exchange satisfies the "writing" requirement of Article II. While United States courts will in many cases "give effect to . . . judicial acts of a foreign nation" under principles of international comity, a foreign court is "not entitled to comity on issues the court did not decide."[40]

Third, Angle World did not waive its right to an independent ruling on arbitrability by a United States court because it contemporaneously objected to arbitration in China. "[W]here a party objects to arbitrability but nevertheless participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred."[41]

---

[39] *Id.* at 293 (Alito, J. concurring).

[40] *Remington Rand Corp.-Delaware v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987) (citations omitted). We need not determine the extent to which a foreign judgment that is otherwise entitled to comity must be given preclusive effect in a United States court proceeding. *See, e.g.*, *In re Cortuk*, 633 B.R. 236, 279–80 (Bankr. D.N.J. 2021).

[41] *China Minmetals*, 334 F.3d at 290. In *China Minmetals*, we noted an open question as to "whether federal or state law should govern the waiver issue" but held that the application of one over the other "would not have altered the outcome of

20

Accordingly, the District Court correctly determined that it was not bound by the decisions of Chinese tribunals and that Angle World did not waive its right to contest enforcement. On remand, the District Court should make an independent determination as to arbitrability in accordance with our instructions above.

## V. Conclusion

For the foregoing reasons, we will vacate the District Court's order dismissing Jiangsu's Petition and remand for further proceedings consistent with this Opinion.

VACATED and REMANDED for further proceedings.

---

the case." *Id.* at 290–91. The same is true here. Under either federal or Pennsylvania law, a party who unsuccessfully objects to arbitration may participate in the arbitration proceedings and await a decision before seeking to vacate the award. *See id.* at 290; *Donegal Ins. Co. v. Longo*, 610 A.2d 466, 468 (Pa. Super. 1992) (citing *Bole v. Nationwide Ins. Co.*, 379 A.2d 1346, 1348–49 (Pa. 1977)).