**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2450
_____

JIANGSU BEIER DECORATION MATERIALS CO., LTD.,
                                                    Appellant

v.

ANGLE WORLD LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:21-cv-02845)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 24, 2024

Before: RESTREPO, FREEMAN, and MCKEE, *Circuit Judges*.

(Opinion filed: August 8, 2024)
_____

**OPINION**[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

FREEMAN, *Circuit Judge*.

After a remand from this Court, Jiangsu Beier Decoration Materials Co., Ltd. renewed its petition to confirm its foreign arbitration award against Appellee Angle World LLC.   The District Court concluded that the parties did not agree to arbitrate, so it denied the renewed petition.  Jiangsu appealed, and we will affirm the District Court's order.

I

A

Jiangsu is a China-based flooring products manufacturer.  Angle World was the exclusive distributor of certain Jiangsu flooring products in Pennsylvania and several other states.

In June 2018, Jiangsu asserted that Angle World owed it more than $1.3 million for inventory Jiangsu had already delivered.  Angle World disputed that amount, and the parties attempted to settle their differences.  On June 28, the parties entered into a Memorandum of Understanding ("the June MOU"), under which Angle World agreed to pay Jiangsu a total of $528,227.59 over a six-month period, with $50,000 of that amount due the day after the execution of the agreement.  The June MOU did not contain an arbitration clause.  Angle World did not make the $50,000 execution payment, but the parties continued to negotiate a resolution to their dispute.

On July 3, 2018, Angle World's accountant emailed a Jiangsu representative a revised payment schedule that required Angle World to make six monthly payments of $87,000 between July and December 2018, and eliminated the execution payment.  A

representative of Angle World replied to add that the payment schedule "will be [an] attachment to our agreement as discussed."  App. 88.

Sometime between July 10 and July 19, 2018, a Jiangsu representative sent an Angle World representative a revised proposed agreement (the "July MOU").  The July MOU attached the July 3 payment schedule with revised payment dates and included an arbitration clause requiring any dispute arising from the agreement to be arbitrated before the China International Economic and Trade Arbitration Commission (CIETAC).   The July MOU also included a provision stating that the MOU "shall enter into force upon sealing of the two Parties or signatures of authorized representatives of the two Parties."  App. 72.

Angle World claims that it rejected the proposed July MOU (and, thus, the arbitration clause) in a July 19 email, in which its representative stated that "[i]t has not been written in accordance with our negotiation" and declined any further negotiations.  App. 126.  By contrast, Jiangsu alleges that the parties finalized the July MOU during a July 20 meeting, where Angle World's President placed the company's corporate seal in the margin of the document.  Then, Jiangsu's representatives allegedly signed, sealed, and mailed a copy of the July MOU to Angle World so that Angle World could seal the document on the signature page.  Angle World did not place its seal on the signature page.

Angle World did not sign the July MOU either.  Throughout August and September 2018, Jiangsu made several requests for it to do so, but Angle World never complied.  After receiving payment reminders and extensions from Jiangsu, Angle World

made two installment payments (on July 27 and September 8), but it claims to have paid in accordance with the June MOU. It made no further payments.

B

In May 2019, Jiangsu commenced arbitration proceedings before CIETAC. Angle World objected to CIETAC's jurisdiction, but CIETAC and the Beijing Fourth Intermediate People's Court ("the Chinese Court") determined that the July MOU and its arbitration clause were enforceable under Chinese law. Following a merits hearing, CIETAC issued a March 2021 award in favor of Jiangsu, ordering Angle World to pay $624,227.59 plus interest and attorneys' fees.

In June 2021, Jiangsu filed its initial petition to confirm the arbitration award in the District Court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Angle World successfully moved to dismiss the petition on the ground that it never agreed to arbitrate. Jiangsu appealed that order.

In November 2022, we vacated the order dismissing Jiangsu's initial petition and remanded for further proceedings regarding whether there was an agreement to arbitrate. *Jiangsu Beier Decoration Materials Co. v. Angle World LLC*, 52 F.4th 554, 562–63 (3d Cir. 2022) ("*Jiangsu*"). We also afforded Jiangsu the opportunity to renew its petition. *Id.* at 563. Upon remand, Jiangsu filed a renewed petition to confirm the arbitration award, and the District Court denied it. Jiangsu timely appealed.

4

## II

The District Court had jurisdiction under 28 U.S.C. § 1331 and 9 U.S.C § 203, and we have jurisdiction pursuant to 28 U.S.C. § 1291. "On review of a petition to confirm an arbitration award, this Court reviews a district court's factual findings for clear error and its legal conclusions *de novo*." *Jiangsu*, 52 F.4th at 559 (citing *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 278 (3d Cir. 2003) ("*China Minmetals*")).

## III

"Before confirming a foreign award, . . . a district court must independently assure itself that the parties consented to arbitrate the merits of their underlying dispute." *Id.* (citing *China Minmetals*, 334 F.3d at 289). In *Jiangsu*, we explained that "the New York Convention subjects confirmation petitions thereunder to a burden-shifting framework[:]"

> First, Article IV requires the party seeking "recognition and enforcement" of an award to make a threshold showing by supplying, "at the time of the application," certified copies of (a) the arbitration award and (b) "the agreement referred to in article II." Second, Article V permits the party resisting recognition and enforcement to avoid confirmation by furnishing proof of one of five affirmative defenses, including that "the agreement referred to in article II" is invalid "under the law of the country where the award was made."

> Article II, in turn, provides that each signatory country shall recognize an agreement in writing under which the parties [agreed] to submit to arbitration. The treaty defines the phrase "agreement in writing" to include "an arbitral clause in a contract [that is] . . . signed by the parties or contained in an exchange of letters or telegrams." Reading Articles II and IV together, proof of "the agreement referred to in article II," i.e., an "agreement in writing," is an essential prerequisite to the recognition and enforcement of an award under the New York Convention. Jiangsu claims it satisfied this

5

requirement through proof that Angle World agreed to the unsigned July MOU through an "exchange of letters."

>The New York Convention does not define the phrase "exchange of letters." Fundamentally, such an exchange must at minimum demonstrate an "agreement" between the parties, that is, a manifestation of mutual assent to be bound by a contract containing an arbitration clause. Beyond this uncontroversial statement, however, courts must determine the existence of an agreement by reference to "background principles of . . . contract law," to the extent those principles do not conflict with the New York Convention.

*Id.* at 561–62 (internal citations omitted).[1]

Applying these guidelines, the District Court began its analysis by evaluating whether Jiangsu satisfied Article IV's prerequisites, which incorporate Article II's written agreement requirement. The District Court considered the entire record, including the parties' declarations, email exchanges, and other documentary evidence. It observed that the record omitted "any written exchange showing that Angle World affirmatively agreed to the Proposed July MOU and its arbitration clause." App. 14. Jiangsu pointed to a copy of the July MOU that purportedly contained Angle World's seal in the margin, but the District Court could not "identify any marks appearing to be the signature or seal of Wang or any other Angle World representative." App. 15; *see also* App. 106. Because Article II of the New York Convention "prohibits the enforcement of an oral agreement to arbitrate an international dispute," *Standard Bent Glass Corp. v. Glassrobots Oy*, 333

---

[1] In our previous opinion, we were persuaded by then-Judge Alito's concurrence in *China Minmetals*, "emphasiz[ing] that a court must reject a confirmation petition if the petitioner fails to satisfy the prerequisites of Article IV—which does incorporate Article II's written agreement requirement." *Jiangsu*, 52 F.4th at 561 n.30 (citing 334 F.3d at 292–94 (Alito, J., concurring)). We thus concluded that "a party must supply proof of a written agreement to obtain enforcement under the New York Convention." *Id*. (citing cases).

6

F.3d 440, 449 n.14 (3d Cir. 2003), the District Court concluded that Jiangsu failed to establish Article IV's second threshold requirement.

On appeal, Jiangsu makes three arguments, each of which we resolved in our prior opinion. First, Jiangsu argues that we did not previously address what needs to be proven with respect to Article IV's second threshold requirement, and it asserts that the validity of the parties' agreement must be assessed under Article V of the New York Convention. But we explained that Article IV requires an "exchange of letters . . . [that] at minimum demonstrate . . . a manifestation of mutual assent to be bound by a contract containing an arbitration clause." *Jiangsu*, 52 F.4th at 561 (citing *Agreement*, Black's Law Dictionary (11th ed. 2019)). No such showing was made here.[2] Thus, the District Court properly resolved this case by determining that Jiangsu failed to meet its burden under Article IV, without turning to Article V's affirmative defenses.

Second, Jiangsu contends that the District Court should have applied Chinese law, rather than Pennsylvania law, when determining whether the agreement to arbitrate was valid. It points to Article V, which permits a party resisting recognition and enforcement of an award to assert that the parties' agreement to arbitrate "is not valid . . . 'under the law of the country where the award was made.'" N.Y. Convention, art. V(1)(a). But Article V's affirmative defenses are not relevant to Article IV's threshold analysis. The

---

[2] To the extent that Jiangsu challenges the District Court's factual findings, it has not demonstrated clear error. It is undisputed that Angle World never signed the July MOU nor sealed the document on its signature page, and we, like the District Court, cannot identify an Angle World seal elsewhere on the document. Jiangsu has not produced any other documentary evidence of Angle World's affirmative assent to be bound by the July MOU's arbitration clause.

District Court properly applied "background principles of contract law, to the extent those principles do not conflict with the New York Convention" to "determine the existence of an agreement." *Jiangsu*, 52 F.4th at 561–62 (cleaned up).

Third, Jiangsu argues that the District Court should have granted comity to the Beijing Court's holding that the parties have a valid agreement to arbitrate the underlying dispute. However, we previously held that the District Court had an obligation "to determine independently the existence of an agreement to arbitrate even though an arbitration panel in a foreign state already had rendered an award," *id.* at 563 (citing *China Minmetals*, 334 F.3d at 284), and that "a foreign court is 'not entitled to comity on issues the court did not decide,'" *id.* (quoting *Remington Rand Corp.-Delaware v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987)). Here, the Beijing Court "determined that the July MOU was enforceable under Chinese domestic law but did not analyze the separate issues of (a) whether an arbitration award would be subject to confirmation in a foreign nation under Article IV of the New York Convention or (b) whether the parties' email exchange satisfies the 'writing' requirement of Article II." *Id.* As we instructed, the District Court properly made "an independent determination as to arbitrability." *Id.* at 564.

\*      \*      \*

For the foregoing reasons, we will affirm the District Court's order denying Jiangsu's renewed petition to confirm its arbitration award.