Filed 5/12/25  Mobasser v. Moyal CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HOOSHMAND ELI MOBASSER,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AMIR HAIM MOYAL, et al.,<br><br>    Defendants and Appellants. | B333355<br><br>(Los Angeles County Super. Ct. No. 21STCP03651) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Bryan Cave Leighton Paisner, Meryl Macklin and Joseph J. Poppen for Defendants and Appellants.

Law Offices of Homan Mobasser, Homan Mobasser; Williams Iagman and Jon R. Williams for Plaintiff and Respondent.

* * * * * *

The multi-national parties to a business transaction agreed to arbitrate their dispute before a panel of rabbis. After the panel awarded one of the parties damages on its claims, the losing party filed a motion asking the trial court not to "recogniz[e] or enforc[e]" the arbitration award. The court denied the motion, finding the movant's account of the arbitral proceedings to be "not credible," and thereafter confirmed the award. Because this appeal from the confirmation of the award lacks merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.   The Business Dispute

Haim Moyal (Moyal) is the director of NKS Laboratories LTD (NKS). NKS manufactures hair care products, including a line of products marketed as the "Nanokeritan System." Both Moyal and NKS are based in Israel. Hooshmand Mobasser (Mobasser) is a United States citizen.

In August 2014, Moyal (for NKS) and Mobasser (for a Nevada corporation called Nanokeritan CA, Inc. (NanoCA)) entered into an Exclusive Distribution Agreement (the agreement). Under the agreement, NKS authorized NanoCA to be the exclusive distributor of Nanokeritan System products in California. The agreement had an initial term of three months, and would automatically renew for three-month terms.

The parties provide widely varying accounts of what happened next.

2

According to Moyal, he and Mobasser terminated the agreement in late 2014 (after Mobasser failed to purchase the required minimum amount of Nanokeritan System products for distribution) and orally formed a new joint venture granting Mobasser the right to market NKS's products in California for a 10 percent share of any sales profits. In 2020, Mobasser sold some of the product meant for California sales to a Dubai-based distributor. Moyal claimed that Mobasser cost him over $15 million, including $6.6 million in lost inventory and $9 million in lost profits caused by Mobasser's sale of the product to Dubai.

According to Mobasser, Moyal shipped the product into California but then leaned on Mobasser to physically move the product to a different warehouse, where Moyal saddled Mobasser with having to pay for the warehouse and related upkeep. Mobasser thereafter learned that the product Moyal sent to California was unfit for distribution in the United States, and asked Moyal what to do with the unsellable product; Moyal told him to do "whatever you want." When Mobasser subsequently sold some of it to a Dubai-based distributor, Moyal became "enraged" and told potential buyers that the product was "stolen" and "expired," forcing Mobasser to refund the sale. Mobasser claimed that warehouse rent and moving expenses, as well as the cost to ship and re-purchase products to the Middle East, cost him nearly $400,000.

## II. The Arbitration Proceedings

### A. *The agreement to arbitrate*

In February 2021, Moyal and Mobasser agreed to arbitrate

their dispute before the Beit Din[1] of the Rabbinical Council of California. Under this arbitration agreement, the Beit Din "select[s] a panel of three rabbis to serve as arbitrators" and the parties waive all right to object to who is chosen or their "qualifications or fitness to serve"; the arbitrators have the sole "discretion" to "determine the procedures for the submission of evidence and argument"; and the arbitrators are to base their decision "on Din Torah, compromise, statutory or common law or any other authority they see fit."

The arbitration agreement authorizes the parties to "take all steps necessary and appropriate to comply with and effectuate the arbitration award," including "obtain[ing] a judgment confirming the award by filing a petition in a court of competent jurisdiction in the County of Los Angeles." However, the arbitration agreement requires the parties to "accept the arbitration award of the [Beit] Din as binding, final and conclusive," and thus to "waive" (1) "any right to challenge, appeal or seek to vacate the arbitration award," and (2) "any right to appeal any award of the [Beit] Din (including without limitation all confirmed awards) to another [Beit] Din, or to any state or federal court."

In its choice-of-law provision, the arbitration agreement provides that the Federal Arbitration Act (FAA) "and related federal law shall govern the interpretation, implementation and enforcement of this Agreement to the fullest extent possible."

---

1 The record also refers to this body as the "Beis Din" and "Beth Din." In their briefs, the parties settle on the term "Beit Din." We will adhere to their convention.

4

**B.**  *The conduct of the arbitration*

Within days of receiving the parties' signed agreement to arbitrate, the Beit Din sent Moyal and Mobasser an email on February 18, 2021 "confirm[ing]" signature of that agreement, "plac[ing] th[e] matter on calendar for" a "hearing" on March 17, 2021, and confirming Moyal's remote appearance (initially planned to be "by speakerphone" but ultimately conducted by Zoom "as a courtesy" to Moyal).  The email referenced further "instructions" that would be sent to the parties.  Those instructions came in the form of a letter, which explained that "[a] single hearing suffices for some cases while multiple hearings are required for others"; that the plaintiff is the first to "present his claims" at the hearing through "documents" and "[w]itnesses," who are "usually asked to testify later in the proceedings"; that the respondent will then present "his understanding of the events and cross claims"; and that "[e]ach side [will be] provided ample time to state their case and arguments."  Although the record on appeal only contains the instructional letter sent to Mobasser, one of the presiding rabbis indicated that "all parties" were "notified."

On February 21, 2021, Moyal sent a pre-hearing "statement" to the panel that "spells out [his] claims."  The record on appeal does not contain any pre-hearing statement sent by Mobasser.

On March 17, 2021, the arbitrators held an "[e]videntiary [h]earing."  The hearing—which took place before Rabbi Sauer, Rabbi Bess and Rabbi Union—lasted "multiple hours."  At that hearing, the parties presented exhibits, Mobasser testified (and was cross-examined by Moyal), and Moyal had the "opportunity to present . . . evidence."  Moyal later denied that the hearing was

5

an evidentiary hearing at all, while simultaneously admitting that Mobasser "present[ed] and elaborate[d] [his] arguments and claims" at that hearing; Moyal also insisted that the hearing lasted fewer than five minutes.

Within days of the hearing, Moyal complained to the arbitrators about "having not been physically present." Rabbi Union responded that the arbitrators had followed the agreed-upon procedure of having Moyal appear remotely and that Moyal could not "now, after the hearing, object and say [he] want[s] it redone, because [he] now decide[s] it was imbalanced."

On May 1, 2021, Mobasser sent the arbitrators a post-hearing brief that articulated his claims for relief under the theories of (1) breach of contract, (2) unjust enrichment, and (3) defamation. On May 23, 2021, Moyal sent the arbitrators a post-hearing brief along with numerous supporting documents, and stated that he also had "hundreds of additional paperwork."

On May 26, 2021, Moyal sent a letter to Rabbi Union implying that Rabbi Union had promised Moyal that he "would be invited . . . to present and elaborate [his] arguments and claims in front of" the arbitrators.

In early June 2021, the arbitrators sent Moyal and Mobasser a letter asking them to file further reply briefs refuting one another's positions because their post-hearing briefing "fail[ed] to respond to points raised by the other party." Moyal and Mobasser filed their replies.

### C. *The arbitration award*

On August 3, 2021, the arbitrators issued a written award. After noting that Moyal and Mobasser "contradict[ed] one another's allegations on the most basic of questions," the arbitrators resolved those conflicts in Mobasser's favor: They

awarded Moyal nothing for his claims and awarded Mobasser $393,099.24 on his claims, consisting of $160,152.58 for breach of contract (because Moyal did not repurchase from Mobasser the products unfit for sale in the United States), $222,946.66 for unjust enrichment (because Moyal saddled Mobasser with the cost of storing NKS's products in California for several years), and $10,000 for Mobasser's time in managing the inventory; the panel awarded Mobasser nothing on his defamation claim.

Two days later, Moyal emailed Rabbi Union declaring his "absolute rejection" of the "unprofessional unfounded misconducted [a]rbitration." Moyal accused the arbitrators of "totally ignor[ing] all proofs, files and documents," of not "fulfill[ing] [their] tasks and commitments as declared [i]n [the] arbitration agreement," of not independently investigating Moyal's own claims for him, and of "absolutely contradicting [the] essence of Judaism which encourages detailing and punctiliousness." Moyal ultimately listed 11 objections to the award, but did not specifically list any failure by the arbitrators to hold an evidentiary hearing at all or any failure to conduct a second evidentiary hearing.

## III.  The Trial Court Proceedings

In November 2021, Mobasser filed a petition to confirm the arbitration award.[2]

In June 2023, Moyal filed a motion "for [an] order refusing recognition and enforcement of [the] arbitration award." In support of his motion, Moyal initially asserted that the March 17, 2021 hearing was merely a "conference call" that lasted

---

2      Although the trial court initially entered a default judgment confirming the award, the court subsequently vacated that judgment.

7

"approximately five minutes" (and thus not an evidentiary hearing), but subsequently asserted that the arbitrators at the March 17 hearing had promised him a further, in-person evidentiary hearing. Mobasser opposed the motion, submitting declarations from himself and Rabbi Union stating that the hearing *was* an evidentiary hearing that lasted "multiple hours."

In July 2023, the trial court issued an order denying Moyal's motion. The court noted how Moyal's argument had "shift[ed]" "from an assertion that *no* hearing was provided[] to an assertion that, at the March 17[, 2021] hearing, a second hearing was orally promised but not provided." The court further found that Moyal had "received an adequate opportunity to present [his] evidence and argument, including during an evidentiary hearing." The court found Moyal's "characterization of the March 17, 2021 hearing" to be "not credible" because it was "contradicted by [Mobasser], one of the arbitrators, and the correspondence between the arbitrators and the parties."

Mobasser thereafter filed a further motion to confirm the award that incorporated an additional $26,975 in attorney fees awarded to Mobasser by the arbitrators. The trial court granted that motion.

## IV. This Appeal

Following the entry of judgment for Mobasser, Moyal timely filed this appeal.

## DISCUSSION

Moyal's appeal fails on its merits.[3]

Moyal effectively makes a two-step argument—namely, (1) an arbitration award between international parties is invalid under the New York Convention, June 10, 1958, 21 U.S.T. 2517,[4] if one of those parties is denied the opportunity to present its case, and (2) Moyal was denied such an opportunity because the arbitrators never held an evidentiary hearing. The first step of Moyal's argument presents a question of law we review de novo. (*Generica Ltd. v. Pharmaceutical Basics* (7th Cir. 1997) 125 F.3d 1123, 1129.) The second step presents a question of fact—which we review deferentially for substantial evidence—as to what happened in the arbitration proceedings (*Ibid.*; *Jiangsu Beier Decoration Materials Co. v. Angle World LLC* (3d Cir. 2022) 52 F.4th 554, 559), and presents a predominantly legal mixed question of law—which we review de novo—as to whether what happened denied Moyal the opportunity to present his case under the New York Convention (*Polimaster Ltd. v. RAE Systems, Inc.* (9th Cir. 2010) 623 F.3d 832, 836 (*Polimaster*); *China National*

---

[3]     We reject Mobasser's request to dismiss this appeal under the arbitration agreement's provision barring the parties from appealing an award, because, as Mobasser conceded during oral argument, that provision includes an impermissible waiver of *all* judicial review of the arbitration award and Mobasser is not asking us to sever that impermissible waiver from the more limited but permissible waiver of any appeal from a judicially confirmed award.

[4]     The formal name for what is commonly referred to as the New York Convention is the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

*Metals Products Import/Export Co. v. Apex Digital, Inc.* (9th Cir. 2004) 379 F.3d 796, 799).

The first step of Moyal's argument correctly states the law. The New York Convention is an international treaty that applies, as pertinent here, to commercial arbitrations involving a United States citizen and the citizen of a foreign country. (*Beijing Shougang Mining Inv. Co. v. Mongolia* (2d Cir. 2021) 11 F.4th 144, 159; *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG* (5th Cir. 2015) 783 F.3d 1010, 1015; *Minister of Defense of Islamic Republic of Iran v. Gould, Inc.* (9th Cir. 1989) 887 F.2d 1357, 1362.) Under the Convention, arbitration awards are generally enforceable unless "one of the grounds for refusal . . . of recognition or enforcement of the award specified in the . . . Convention" applies. (9 U.S.C. § 207.) As relevant here, the Convention provides that "recognition and enforcement of [an] award may be refused" if (1) "[t]he party against whom the award is invoked" was "unable to present his case" (21 U.S.T. 2517, at Art. V, § 1(b)), or (2) "the arbitral procedure was not in accordance with the agreement of the parties" (*id.*, § 1(d)). In assessing whether a party was unable to present its case, courts look to "'the forum state's standards of due process'" (*Iran Aircraft Industries v. Avco Corp.* (2d Cir. 1992) 980 F.2d 141, 145-146), and due process under federal law encompasses "an adequate opportunity to present . . . evidence and arguments" (*Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901* (1st Cir. 1985) 763 F.2d 34, 39; *Tempo Shain Corp. v. Bertek, Inc.* (2d Cir. 1997) 120 F.3d 16, 20). Applying these standards, courts have declined to enforce arbitration awards under the Convention when the arbitrators misled a party by indicating proof need not be by invoices but

then found a failure of proof based on the failure to provide invoices (*Iran Aircraft*, at p. 146) or by promising a hearing but not providing one (*International Union, UMW v. Marrowbone Dev. Co.* (4th Cir. 2000) 232 F.3d 383, 390; *Murphy Oil USA, Inc. v. USW AFL-CIO Local 8363* (E.D.La. March 4, 2009) 2009 U.S. Dist. Lexis 19098, at *8-*9).

The second step of Moyal's argument, however, is unsupported by the record.  That is because the trial court found that Moyal *did* receive an evidentiary hearing on March 17, 2021 and that the arbitrators did not promise a further evidentiary hearing.  The trial court's findings are supported by substantial evidence:  Both Rabbi Union and Mobasser declared that the March 17, 2021 hearing was an evidentiary hearing, and the pre-hearing letter corroborated their declarations by indicating that the Biet Din typically holds a "single hearing" where "documents" and "[w]itnesses" are presented.  Although Moyal offered a contrary declaration, the trial court found this declaration not to be credible and, when reviewing the trial court's findings, we may not gainsay the court's credibility finding or reweigh the evidence.  (*Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1015.)  Moyal's near-contemporaneous failure to raise the absence of a hearing as one of his 11 objections in his post-award letter undercuts Moyal's own declaration.  Applying these findings, Moyal was accorded due process and provided precisely what the arbitration agreement promised—an evidentiary hearing.

Moyal responds that the trial court's factual findings, including its adverse credibility finding, are unsupported by substantial evidence because four "undisputed facts" in the record refute those findings.

11

First, Moyal argues that it is "temporally impossible" that the March 17, 2021 hearing was an evidentiary hearing because it is "undisputed" that Mobasser first articulated that he was seeking relief for breach of contract, unjust enrichment, and defamation in his May 2021 post-hearing filing.[5]  Nothing else in the record, Moyal continues, shows that Mobasser articulated these claims prior to or at the hearing (and thus failed to give Moyal advance notice of those claims).  This argument ignores that, in reviewing findings for substantial evidence, we are to give the prevailing party "the benefit of all reasonable inferences" (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465); here, we may reasonably infer from Rabbi Union's and Mobasser's declarations—as well as from Moyal's own admission in his May 26, 2021 email that Mobasser "present[ed] and elaborate[d] [his] arguments and claims" at the March 17 hearing—that Mobasser presented evidence at that hearing in support of the claims he articulated in his post-hearing filing.  Moyal effectively urges us to discard the trial court's findings based on a gap in the record (that is, the absence of Mobasser's pre-hearing filing and a transcript of the March 17 evidentiary hearing), a gap that Moyal—as the party bearing the burden of showing invalidity of an award under the Convention (*Polimaster*, *supra*, 623 F.3d at p. 836) and the party bearing the burden of showing error on appeal (*Vaughn v. Jonas* (1948) 31

---

[5]     At oral argument, Moyal repeatedly referred to this as Mobasser's "cross-complaint," but the document is labeled a "Brief of Arbitration Issues."

12

Cal.2d 586, 601)—had the duty to fill with evidence *contradicting* the court's findings.[6]

Second, Moyal argues that his May 26, 2021 email implying that Rabbi Union had promised a second hearing was also "undisputed" because Rabbi Union at no point thereafter explicitly said he did *not* promise a second hearing. Again, this argument ignores the standard of review. Rabbi Union declared that the March 17, 2021 hearing was an evidentiary hearing, and the pre-hearing letter indicated that typically there is only one hearing; we can reasonably infer from these facts that there was no promise of a further hearing. What is more, the May 26 email—coming as it did after Moyal's earlier post-hearing complaint about the arbitration procedure—was, as the trial court found, an attempt to insert untrue facts into the arbitral record that Moyal could use in subsequent challenges to the order.

Third, Moyal argues that it is "undisputed" that only Mobasser received the pre-hearing letter because the only copy of the letter in the record was addressed to Mobasser. Yet again, this argument ignores the standard of review. Rabbi Union declared that "all parties" were "notified" of the evidentiary hearing. This fills in the purported "gap" in the record that Moyal would like us to otherwise construe in his favor.

Fourth, Moyal argues that none of the correspondence uses the phrase "*evidentiary* hearing," such that it remains

---

[6] For the first time in his reply brief, Moyal argues that due process was violated because Mobasser articulated his claims for the first time in his post-hearing filing. Moyal waived this argument by not raising it in his opening brief. (E.g., *Old East Davis Neighborhood Assn. v. City of Davis* (2021) 73 Cal.App.5th 895, 915.)

13

"undisputed" that there was no evidentiary hearing.  This, too, ignores the standard of review because it wholly ignores the sufficient evidence—including the pre-hearing letter—detailed above that documents and witnesses would be, and were, presented at the March 17 hearing.

## DISPOSITION

The judgment is affirmed.  Mobasser is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
WILLIAMS⁕

---

⁕ Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.